RECEIVED
MAR 3 1 2006

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **ROBERT L. BERRY** | **CIVIL ACTION NO. 04-2144** |
| VS. | |
| **HARTFORD LIFE & ACC. INS. CO.** | **MAGISTRATE JUDGE METHVIN BY CONSENT OF THE PARTIES** |

## MEMORANDUM RULING

Before the court are cross-motions for summary judgment on ERISA coverage.[1] Both parties filed oppositions.[2] For the reasons set forth below, the court concludes that defendant did not abuse its discretion in denying plaintiff's claim for long term disability benefits. Defendant's Motion for Summary Judgment is therefore GRANTED and plaintiff's motion is DENIED.

### *Background*

Robert Berry ("Berry") was born on October 2, 1949.[3] He was employed by Province Healthcare Company as a janitor.[4] On November 3, 2003, Berry filed a claim for Long Term Disability ("LTD") benefits under a policy issued to Province.[5] Berry claimed disability due to heart problems. Hartford Life Insurance Company ("Hartford"), serves as the claim administrator for insured persons under the policy.

During its review of Berry's claim, Hartford contacted Dr. Clay Hammett, who summarized his care of Berry as of February 18, 2004 as follows:

---

[1] Rec. Doc. 23 and 28..

[2] Rec. Doc. 28 and 29.

[3] Administrative Record p. 187.

[4] Administrative Record p. 129.

[5] Administrative Record p. 190-198.

[Berry] was admitted on July 1, 2003 to Doctors' Hospital. On July 2nd, he underwent left heart catheterization which showed 50-60% LAD stenosis with some mild bridging and a dominant circumflex with a lesion of 70-80% in the ongoing circumflex. He had an occluded RCA with left to right collaterals and normal left ventricular function. He was medically treated at that time and started on Plavix and Aspirin. He was brought back a week later, and on July 7th, he underwent PTCA of a small ongoing circumflex in two separate lesions with 80% stenosis reduced to a 10% stenosis approximately and a 99% reduced to a 20% in the more distal lesion with good results. He was seen in follow-up on July 24th.... He followed up on August 5th with no complaints of chest pain at that time. He was not seen again until the 14th of October when he attempted to do a stress test in regards to getting his disability papers filled out. The patient was too poorly coordinated to walk on the treadmill. I do not think this was a physical limitation from cardiovascular disease or peripheral vascular disease. The ETT was therefore non diagnostic. He had an echocardiogram done on July 24, 2003, which showed normal function and trace triscuspid regurgitation with concentric left ventricular hypertrophy.

At this time, the patient has not complained of any further chest discomfort to suggest stenosis. However, the patient states he cannot work.... It is quite difficult to ascertain whether the patient can work or not, based on his cardiovascular system, especially when he was unable to ambulate on a treadmill.

\*\*\*

It appears that his back and leg complaints are more of a reason why he can't work as opposed to his cardiovascular complaints.[6]

The administrative record also includes Dr. Hammett's records.

On March 8, 2004, Hartford received medical records from University Medical Center ("UMC") where Berry was treated for his back and leg pain. A MRI of the lumbar spine performed on September 5, 2003 revealed posterior central disc bulges, with mild central canal stenosis at levels L3-L4 and L4-L5, and mild to moderate bilateral neural forminal narrowing at

---

[6] Administrative Record p. 149-150.

L4-L5 and L5-S1.[7] On September 19, 2003, Berry was examined at UMC for intermittent back and knee, without radiculopathy.[8] Berry was diagnosed with arthritic back pain.

On March 22, 2004, Hartford denied Berry's claim for LTD benefits:

> To meet the definition of Disability above, you must be unable to perform the duties of your occupation. The Job Description and other Employer information in your file show that your occupation is Environmental Service Technician. The Occupational Analysis completed by a Vocational Rehabilitation Clinical Case Manager shows that the Essential Duties of Your Occupation in the general workplace include cleaning, mopping, buffing, and collecting trash. To perform these duties you must be able to exert 20-50 pounds of force occasionally, and/or 10-25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects.
>
> \*\*\*
>
> The medical information submitted by Dr. Hammett shows that on 7/24/03 you had an echocardiogram which showed normal cardiac function. Dr. Hammett indicates that you have not complained of any further chest discomfort to suggest further problems. Dr. Hammett advised that the stress test from 10/14/03 was non diagnostic as you were unable to walk on the treadmill. Dr. Hammett advised us to refer to your primary care physician to further assess your disability as it appears to him that your back and leg complaints are more of a reason to why you are unable to work rather than your cardiac complaints.
>
> The medical information for Dr. Harrington [UMC] indicates that you had a MRI completed on 9/05/03.... On 9/19/03, Dr. Harrington indicated that your back pain is classified as arthritic back pain for which you were given a Depromedrol injection. Dr. Harrington did not indicate that you were unable to work at that time. Dr. Harrington has not provided any restrictions or limitations from this back pain that would prevent you from performing your occupation. On 10/13/03 Dr. Harrington indicated that the MRI revealed posterior and central disc bulges through the L-Spine however it has been stable since 2000. Dr. Harrington does not indicate any restrictions or limitations based on your back condition at the 10/13/03 office visit. The 10/13/03 office visit was the last office note made available to us.
>
> We have concluded from the combination of all the medical information in your file that you are able to exert 20-50 pounds of force occasionally, and/or 10-25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects.

---

[7] Administrative Record p. 146-147.

[8] Administrative Record p. 143.

\*\*\*

> The combined information in your file does not show that you are unable to perform the Essential Duties of Your Occupation on a full time basis throughout and beyond the Elimination Period. Because of this, we must deny your claim for LTD benefits and no benefits are payable to you under the terms of this policy.[9]

Berry did not appeal the decision. On October 19, 2004, Berry filed a complaint requesting that the court award long term disability benefits.[10] On February 4, 2005, Hartford answered the complaint and requested an award of attorney's fees.

### *Summary Judgment Standard*

The Federal Rules of Civil Procedure provide for summary judgment where no genuine issue as to any material fact exists. Fed.R.Civ.P. 56(c). The threshold inquiry is whether there are any genuine factual issues which require resolution by a finder of fact because they may reasonably be resolved in favor of either party. Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Substantive law dictates which facts are material. Id. The evidence must be reviewed in the light most favorable to nonmover. Id. However, summary judgment should be granted when the nonmoving party fails to meet its burden to come forward with facts and law demonstrating a basis for recovery that would support a jury verdict. Little v. Liquid Air Corp., 37 F.3d 1069, 1071 (5th Cir. 1994).

### *ERISA*

The Standard Plan is governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.* ("ERISA").[11] The proper standard of review in an ERISA case is *de novo* unless the benefit plan gives the plan administrator discretionary authority

---

[9] Administrative Record p. 127-130.

[10] Rec. Doc. 1.

[11] The parties have stipulated that the Plan is governed by ERISA. *See* Rec. Doc. 20.

to determine eligibility for benefits. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). When the plan administrator is given discretionary authority, the abuse of discretion standard is used and the administrator's decision will be affirmed if it is supported by substantial evidence. Vega v. National Life Ins. Services, 188 F.3d 287 (5th Cir. 1999). "Substantial evidence" is "more than a mere scintilla ... [i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Girling Health Care, Inc. v. Shalala, 85 F.3d 211, 215 (5th Cir.1990) (quoting Richardson v.. Perales, 402 U.S. 389, 401 (1971)). When reviewing an administrator's resolution of factual issues, the decision need only fall "somewhere on a continuum of reasonableness – even if it is at the low end." Vega, 188 at 297; Woosley v. Marion Labs., Inc., 934 F.2d 1452 (10th Cir1991)(holding in part that the decision of the administrator need not be the only logical one nor even the best one as long as it is sufficiently supported by facts within her knowledge to counter a claim that the decision was arbitrary or capricious).

There is some modification of the abuse of discretion standard where there exists a self-interested insurer. A "self-interested insurer" is one who serves as both the insurer and the administrator of the plan and potentially benefits from every denied claim. See Vega, 188 F.3d at 295. The existence of a conflict of interest is a factor to be considered in determining whether an administrator abused its discretion in denying a claim. Id. at 297. The Fifth Circuit applies a "sliding scale" approach when addressing potentially conflicted administrators. "The greater the evidence of a conflict on the part of the administrator, the less deferential [the] abuse of discretion standard will be." Id. at 297. If, however, there is no evidence to support a conflict of interest, an administrator's decision will be reviewed "with only a modicum less deference." Id.

at 301; *see also* Bowers v. UnumProvident Corp., No. 01-0046, 2002 WL 10467, at *4 (E.D.La. Jan. 2, 2002) (noting that the plaintiff "has advanced no evidence specifically indicating a conflict ... [and] has offered no evidence of financial arrangements that would illuminate the nature of the alleged conflict"); Dew v. Metro. Life Ins. Co., 69 F.Supp.2d 898, 902 (S.D.Tex.1999) (stating that plaintiff's "only evidence of a conflict is [Defendant's] position as both insurer and administrator ... the evidence does not support a degree of conflict other than minimal").

## *Analysis*

### *Applicable standard*

The parties do not dispute that the plan in this case vests the administrator with discretionary authority to determine eligibility for benefits and to construe the terms of the plan.[12] Accordingly, the court will apply the abuse of discretion standard.[13]

Further, Hartford is both the insurer and the plan administrator. Plaintiff, however, does not claim that Hartford has a conflict of interest in administering the plan. Therefore, the court will address Hartford's decision "with only a modicum less deference" than that afforded an administrator operating without a conflict of interest. Vega, 188 F.3d at 301.

---

[12] *See* Rec. Doc. 15 and 16.

[13] The abuse of discretion standard also applies to administrator decisions interpreting plan terms, when the plan documents give the administrator discretionary authority to determine eligibility for benefits or to construe plan terms. Rhorer v. Raytheon Eng'rs and Constructors, 181 F.3d 634, 638-39 (5th Cir.1999). The court first determines the correct interpretation of the plan. If the administrator's construction is legally sound, the inquiry ends. If, however, the administrator did not interpret the plan correctly, the court then determines whether the administrator's interpretation constituted an abuse of discretion. Id. at 639-40. Three factors apply at each of the two steps. Id. at 641, 643-44; Wilbur v. ARCO Chem Co., 974 F.2d 631, 637-38 (5th Cir.1992). The six-part analysis applies only to administrative interpretations of the plan terms, not to factual determinations. Trahan v Bellsouth Communications, 847 F.Supp. 54, 56 (W.D. La. 1994). Here, the court has only been presented with issues regarding the administrator's factual determinations. Plaintiff has not identified any terms which were allegedly misinterpreted. Thus, the court will not address the Wilbur factors.

## *Hartford did not abuse its discretion*

The issue confronting the court is whether Hartford abused its discretion in determining that plaintiff was not eligible for LTD benefits. Berry maintains that Hartford abused its discretion because he is unable to perform his past work.[14] Berry has not made any references to the administrative record which supports this contention. Moreover, although Berry references an October 10, 2003 examination by Dr. Samuel Stagg, this report is not part of the administrative record.[15] Additionally, Berry states that he is unable to work at heights and is "limited on climbing ladders, steps, or balance," yet he has not cited support for this contention in the record.[16]

"A long line of Fifth Circuit cases stands for the proposition that, when assessing factual questions, the district court is constrained to the evidence before the plan administrator." Vega, 188 F.3d at 299, citations omitted. Since the October 10, 2003 report from Dr. Stagg as well as the information regarding Berry's functional capacity are not part of the administrative record, the court is precluded from considering that information. Moreover, Berry stipulated that the administrative record filed by Hartford on April 15, 2005 was complete. Accordingly, the court is precluded from considering the additional information

An examination of the administrative record shows that Hartford reviewed plaintiff's claim and denied benefits. During this process, Hartford obtained Berry's medical records and had a vocational assessment performed. Considering these documents, and the fact that no

---

[14] Rec. Doc. 28, p. 5.

[15] Berry has not provided a copy of the report with his brief; regardless, the court is precluded from considering it since it is not part of the administrative record.

[16] Rec. Doc. 28 at p. 4.

doctor had found that Berry was restricted from working, Hartford found that plaintiff was capable of performing his occupation.

Considerable deference must be afforded the findings of the plan administrator. When reviewing an administrator's findings of facts, the decision need only fall "somewhere on a continuum of reasonableness – even if it is at the low end." Vega, 188 at 297. Although Berry makes the conclusory statement that "ongoing restrictions from his impairments reduce his residual functional capacity to light work activity," the record is void of any such information. Contrary to Berry's assertions, the administrative record contains substantial evidence supporting the decision to deny Berry's claim for LTD benefits because there is no evidence that his impairments affect his capacity to perform his occupation. Accordingly, I find that Hartford did not abuse its discretion in denying plaintiff's claim.

### *Attorney's Fees*

ERISA provides that attorney's fees and costs may be awarded to the prevailing party. Title 29 U.S.C. §§ 1132(g)(1). Attorneys' fees awards under ERISA are purely discretionary. Todd v. AIG Life Ins. Co., 47 F.3d 1448, 1458 (5th Cir.1995). The Fifth Circuit has set forth five factors to determine whether attorney's fees should be awarded: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the party requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' position. Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir.1980).

In this case, the undersigned finds that an award of fees is not appropriate. There is no evidence that plaintiff acted in bad faith. Further, considering plaintiff's unemployment, it is unlikely that he has the ability to satisfy an award of fees, nor does it appear that an award of fees against this plaintiff would deter other persons from filing suit. Considering these factors, fees will not be awarded.

### *Conclusion*

For the foregoing reasons, the court concludes that Hartford did not abuse its discretion in finding that plaintiff was not eligible for LTD benefits and there are no genuine issues of material fact thereto. Accordingly, Hartford is entitled to summary judgment as a matter of law.

Signed at Lafayette, Louisiana on March 31st, 2006.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, LA 70501
(337) 593-5140     FAX 593-5155